## Commonwealth v. Hart

James P. Gregor, district attorney, for the Commonwealth.

David L. Kurtz, for defendants.

O'BRIEN, J., September 12, 1986—On August 20, 1986 following a trial de novo, the court found all defendants guilty of cruelty to animals in violation of 18 Pa.C.S. §5511(c). All defendants have filed post-verdict motions as contemplated by Pa.Crim.P. 1123 in the nature of a motion for judgment of acquittal. Defendant Jose Ortiz alleges that his oral statement to a police officer was improperly admitted into evidence at trial and all defendants allege the statutory provision is unconstitutionally broad and vague as applied to them.

At trial a state policeman testified that acting on a tip, a group of state policemen investigated the scene of an alleged cockfight in Hamilton Township, Monroe County. When the policemen entered the barn in which the cockfight was allegedly being held, all of defendants were present. Defendant Ortiz identified himself as the property owner, and after being advised of his Miranda rights, advised the state policemen that all defendants were present for a "sporting event" and that two cockfights had been held. The officers took a series of graphic pho-

tographs which were admitted without objection at trial. These photographs depict a bloody hatchet, a series of cages containing cock birds, empty cock cages, a plywood arena, sharp metal prongs, two decapitated dead cock birds and related paraphernalia. Testimony of various witnesses placed all defendants as being present at the scene when the officers arrived at 8:00 p.m. on a Saturday night.

The statute which defendants are charged with violating provides in·pertinent part as follows:

"A person commits a summary offense if he . . . keeps or uses, or in any way is connected with, or interested in the management of, or receives money for the admission of any person to any place kept or used for the purpose of fighting or baiting any bull, bear, dog, cock or other creature, *or encourages, aids or assists therein,* or permits or suffers any place to be so kept or used. This subsection shall not apply to activity undertaken in normal agricultural operation." (Emphasis supplied). 18 Pa.C.S. §5511(c).

All defendants, except Jose Ortiz, allege that the aforesaid statute is unconstitutionally broad and vague as applied to them and that they could not be found guilty of violating the statute by merely being in attendance or present at the scene. Anyone viewing the photographs admitted at trial would have to be naive if not persuaded beyond a reasonable doubt by said photographs that a cockfight was being held on the Saturday evening in question. Further, the admission by defendant Ortiz supports this conclusion. However, defendants argue that their mere presence at the scene could not constitute a violation of the statute. However, defendants apparently overlook that section of the statute which proscribes the actions of one who "encourages, aids or assists" a cockfight. As the assistant district attorney noted

at argument, if none of the defendants had come that Saturday evening, there would not have been a cockfight. Similarly, the Supreme Court of Tennessee in State v. Tabor, 678 S.W.2d 45 (Tenn. 1984). in upholding a conviction for attendance at a cockfight stated "how could anyone more effectually promote and encourage a game or match of this kind than by . . . . giving it countenance by his presence . . .?".

While the general constitutionality of the statute in question has not been litigated in Pennsylvania, this issue has been addressed with respect to a comparable statute in the state of Utah. In Peck v. Dunn, 574 P.2d 367 (Utah, 1978), the Supreme Court of Utah upheld convictions for mere presence at a cockfight with the following language:

"It is elementary that the governing authority in the exercise of its police power has both the prerogative and the responsibility of enacting laws which will promote and conserve the health, safety, morals and general welfare of society. The question is whether this ordinance is properly regarded as regulatory of morals. What constitutes morals is whatever conduct, customs and attitudes are generally accepted and approved at the time in the particular culture. It is therefore essential to consider whether cock fighting can be regarded as merely an innocent diversion, as plaintiff's argument seems to suggest, or is itself an evil which may be condemned by law.

In former times the provoking and baiting of animals to fight each other for the amusement of spectators was a diversion to be accepted, or at least tolerated. Indeed in yet earlier times the pitting of human beings against each other as gladiators, or against animals, was similarly viewed; and even today the fighting of animals is so accepted in some

parts of the world. Over the centuries the disposition to look upon such brutalities with favor or approval has gradually lessened, and compassion and concern for man's fellow creatures of the earth has increased to the extent that it is now quite generally thought that the witnessing of animals fighting, injuring and perhaps killing one another is a cruel and barbarous practice, discordant to human's better instincts and so offensive to his finer sensibilities that it is demeaning to morals.

Whatever one's personal views may be of such matters, the legislative authority of our state has determined as a matter of public policy that such conduct is so involved in public morals and welfare that it has made cruelty to animals a crime and included therein the causing of one animal to fight with another. There is no question but that a cock is an animal; and the county ordinance in question specifically so indicates by its express prohibition of the causing animals, including any fowl, to fight. The county ordinance in question is in harmony with and does not extend the concept determined as the public policy of our state by the statute referred to. In consequence of what we have said above, we are in agreement with the expression of respected authorities that legislation against such practices as the fighting of animals is justified for the purpose of regulating morals and promoting the good order and general welfare of society."

Prosecutions for attendance at cockfights in Pennsylvania date back to the nineteenth century. Commonwealth v. Deckard, 7 Dist. 400, (1898). There are also reported decisions dealing with such prosecutions in this century. Commonwealth v. Brownfield, 32 Luzerne Legal Reporter 63 (1937); In Re: Deposit of Cash in Lieu of Bail, 29 D.&C. 543 (1937). A famous Pennsylvania jurist said if there is

one commodity of which there is no need for a further supply, it is violence. If there is one school that the world can afford to miss, it is one for the tutoring of methods of violence, brutality and cruelty. In Pennsylvania we can well do without a cockfight which involves nothing less than the torture of helpless animals. The most explicit commentary in Pennsylvania jurisprudence on this subject was by the legendary Justice Musmanno in Pennsylvania Society for Prevention of Cruelty to Animals v. Bravo Enterprises, Inc., 428 Pa. 365, 237 A.2d 351 (1968). Justice Musmanno's words, paraphrased with appropriate artistic license by this writer, were stated as follows:

"The cock is goaded, tantalized and lanced into a state of fury, and then they plunge their pusillanimous prongs into the vitals of a dumb bird who never done them harm and who, under the laws of nature, is entitled to enjoy the freedom of green fields, refreshing brooks, and playful companionship with other members of the fowl family."

"A dog's life is not much of a life of itself, nor is that of a cock, a horse or any other dumb creature. But he is at least entitled to nonmolestation from those who, too gross to understand the rapture of music, too shallow to appreciate the beauty of literature, too sluggish to respond to the drama and comedy of the theater, too apathetic to excite over the wholesome contest of athletics, too dull to comprehend the wizardry of painting and sculpture, must have their superficial natures titillated by the bellowing of pain of a helpless, tripping, bleeding bird."

We also find the oral statement made by defendant Jose Ortiz was properly admitted into evidence. Testimony at trial clearly established that he was advised of his Miranda rights and the totality of the evidence meets the criteria set forth in Common-

wealth v. Scarborough, 491 Pa. 300, 421 A.2d 147 (1980) for admissibility of such statements.

## ORDER

And now, this September 12, 1986, post-verdict motions of all defendants are denied. All defendants are directed to be present for sentencing on September 17, 1986 at 9:30 a.m. in Courtroom No. 2, Monroe County Courthouse, Stroudsburg, Pa.